**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Criminal Case No. 17-CR-334-CMA**

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**

**1.  MARCO CASTRO-CRUZ,**
     **a/k/a Guero,**

     **Defendant.**

---

## FED. R. CRIM. P. 11(c)(1)(C) PLEA AGREEMENT

---

THE UNITED STATES OF AMERICA (Government), through Acting District of Colorado United States Attorney Robert C. Troyer, by Guy Till, Special United States Attorney to the United States Attorney General in the District of Wyoming and Assistant United States Attorney in the District of Colorado, and Assistant United States Attorney Barbara Skalla, and the defendant, MARCO CASTRO-CRUZ, a/k/a Guero, hereinafter referred to as the defendant, personally, and by his counsel of record, BOSTON H. STANTON, JR., Esq., submit the following Plea Agreement and Stipulation of Facts relevant to sentencing, pursuant to the provisions of Fed. R. Crim. P. 11(c)(1)(C) and D.C.COLO.LCrR 11.1.  It is the intention of the parties to resolve pending federal District of Wyoming and federal District of Colorado criminal issues now known to the Government [noting as an exception the terms of the plea agreement for District of Colorado case number 14-cr-144-CMA for which the defendant will also be sentenced

1

COURT EXHIBIT
1

and tax issues, if any exist (none are presently known to the parties)] between the
defendant and the Government through the resolution of this case.

## I. PLEA AGREEMENT

A.   To be effective, this Plea Agreement requires the defendant has voluntarily
requested the Rule 20 transfer of District of Wyoming Case No. 14-CR-00007-ABJ to the
District of Colorado in writing no later than September 15, 2017.

(1)   The defendant agrees to plead guilty to Count One of the Indictment in District
of Wyoming Case No. 14-CR-00007-ABJ alleging Marco Castro-Cruz committed the
crime of Conspiracy to Distribute Heroin Resulting in Death, in violation of **21 U.S.C. §§
846 and 841(a)(1) and (b)(1)(C).**

(2)   The parties further agree that, pursuant to Crim.P. 11(c)(1)(C), a sentence
of a term of imprisonment of at least 20 years but not more than 23 years is an appropriate
disposition of this case for this defendant at this time.   If the Court imposes a sentence
which includes a term of imprisonment greater than 23 years, the defendant shall have
the right to withdraw his pleas of guilty and proceed to defend this case. If the Court
sentences the defendant to less than 20 years in prison, the government shall have the
right to withdraw from this plea agreement and proceed in prosecuting the defendant.

B.   The parties understand the U.S. Sentencing Guidelines are advisory in
nature and the Court will impose a sentence in its sound discretion and in accordance
with the terms of 18 U.S.C. § 3553.  The defendant and the Government reserve full
rights to contribute or to object to the process of sentencing the defendant and setting the
applicable Sentencing Guidelines range.   The Government or the defense may file

2

pleadings, present argument, and offer evidence if the defense or the Government believes it is in the best interest of justice to respond to representations, evidence, or argument presented by the opposing side or if the defense or the Government is of the opinion that an error has been made or may be made by the Probation Department or the Court in determining the appropriate sentence or Sentencing Guidelines range for the defendant.

C.      The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the Court imposes a sentence of imprisonment greater than twenty-three years or the Court determines that the total offense level is greater than 36 and imposes a sentence above the sentencing guidelines range calculated for that total offense level; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

D.      The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive

3

change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

E.     Assuming the defendant timely filed his notice of disposition by the date indicated above, and effectively withdrew and withheld any pretrial motions, the Government agrees to recommend a two level adjustment for acceptance of responsibility after the defendant enters said guilty pleas.

F.     The parties understand the U.S. Sentencing Guidelines are advisory in nature and the Court will impose a sentence in its sound discretion and in accordance with the terms of 18 U.S.C. § 3553.

G.     Upon the imposition of sentence on the defendant in this case, the Government will file a motion asking the Court to dismiss Count Two of the Indictment in this case as to this defendant.

## II.  ELEMENTS OF THE OFFENSE

A.     With respect to **Count One** of the **Indictment**, **Conspiracy** to distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of heroin in violation of **21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C)**, resulting in death, the elements of the offense charged, which the defendant admits in order to enter a plea of guilty and which the Government would be required to prove beyond a reasonable doubt if the matter went to trial, are as follows:

(1)    The defendant;

(2)    within the District of Colorado;

(3)    on or about April 9, 2013,

4

(4)    knowingly agreed with at least one other person to distribute or to possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance;

(5)    a portion of said heroin was consumed or used by a person and such consumption or use resulted in death, and

(6)    the defendant and other members of the conspiracy depended on one another to achieve the goals of the conspiracy; the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

## III.  STATUTORY PENALTIES

A.    The statutory penalty for the offense charged in **Count One** of the Indictment, conspiracy to distribute and possess with intent to distribute a quantity of heroin resulting in death in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C), is imprisonment for not less than 20 years and not more than life, a fine of not more than $1,000,000, or both a fine and a period of imprisonment; a term of supervised release of not less than 3 years and not more than life; and a $100.00 special assessment.

B.    In exchange for the defendant's plea of guilty, the Government agrees to recommend a sentence of imprisonment to a period of not more than 23 years, to be followed by not less than 3 years supervised release, a special assessment of $100.00 and such fine as the Court may determine; the Government and the defense also agree

–5–

pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the sentence of imprisonment imposed for

the present matter shall be concurrent with the sentence of imprisonment imposed upon

defendant Marco Castro-Cruz in District of Colorado Case No. 14-cr-144-CMA-4. If the

Court declines to impose concurrent sentences or if the period of the sentences to

imprisonment exceeds twenty-tree years, the defendant will be entitled, pursuant to the

terms of Fed. R. Crim. P. 11(c)(1)(C), to withdraw his pleas of guilty in both cases.

C.      If probation or a period of supervised release is imposed on a defendant,

and if the defendant violates a condition of probation or supervised release the Court may

impose a period of imprisonment based on such violation. A period of imprisonment

imposed due to a violation may be followed by an additional period of supervised release.

## IV. COLLATERAL CONSEQUENCES

A federal felony conviction may have substantial consequences for a person=s

civil rights and abilities, such as the ability to qualify for certain professional licenses, the

right to own, use, or carry a firearm, the right to hold elected office, the right to serve on a

jury, or the right to vote during a period of confinement or supervised release.   If a person

is not a citizen of the United States, it is likely that the person convicted of a federal felony

will be deported and excluded from the United States, generally following any period of

imprisonment.

## V.   STIPULATION OF FACTS RELEVANT TO SENTENCING

A.      The parties agree that there is a factual basis for the guilty plea that the

-6-

defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

B.     This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

C.     The parties stipulate that had this case gone to trial, the government would have proven the following facts beyond a reasonable doubt.   The parties further stipulate that these facts do not encompass all of the facts which would have been proven at trial.

D.     On or about April 9, 2013, within the District of Colorado, the Defendant, **MARCO CASTRO-CRUZ**, a/k/a Juan Ramirez-Perez, a/k/a Guero, knowingly conspired and agreed with another person that one and more than one of them would distribute and possess with intent to distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, that such a quantity of heroin was in fact distributed, and the use of a portion of said heroin resulted in the death of Kaleb Paul

–7–

Skog within the District of Wyoming on or about April 10, 2013, in violation of 21 U.S.C. § '846 and 841 and (b)(1)(C). *See United States v. De La Cruz,* (D.C. Mass.) 2007 WL 2579631, at p. 3 ("Government only had to show that Defendant put heroin into a distribution chain that resulted in Wallace's [the deceased victim] death. The trial court properly instructed the jury on the law and was correct in preventing defense counsel from arguing the issue to the jury. . . The trial court instructed the jury that in order to find Defendant guilty, they had to find that Bryan Wallace used heroin, that this heroin was the 'but for' cause of his death, and that the heroin was distributed by the conspiracy." *See also United States v. McIntosh,* 236 F.3d 968, 972 (8th Cir. 2001)(. . ."giving effect to [the statute's] plain meaning prohibits us from superimposing upon the statute a foreseeability or proximate cause requirement.") *Accord United States v. Burkholder,* 816 F.3d 607, 616-17 (10th Cir. 2016)(citing with approval decisions construing the § 841(b)(1)(C) "death resulting" language as establishing strict liability for heroin distributors where the heroin results in death, and extending the logic of strict liability to violations of 21 U.S.C. 841(b)(1)(E) resulting in death).

E. Beginning on or about March 1, 2013, through on or about April 25, 2013, within the District of Colorado, a Honduran national called "Nico" possessed and used a mobile telephone with the number 720-327-5897 to contact sources of supply who provided Nico with distribution quantities of heroin and cocaine (generally in quantities of half an ounce to an ounce). Nico also used the mobile telephone to take calls from

users and re-distributors of cocaine and heroin to whom Nico sold portions of heroin and cocaine for profit.

F.    Nico sourced heroin and cocaine from a Sinaloan based group whose members did not use heroin themselves although they sold it to others.  The Sinaloans were economically dependent on the street level dealers to distribute heroin and cocaine to English speaking users and re-distributors – the street level dealers, in turn, depended upon the Sinaloan source of supply for a steady and consistent supply of merchantable heroin. The Honduran street level distributors shielded the Sinaloan sources of supply from the hazards of direct contact with persons who could be undercover American narcotics investigators.

G.    Between March 1, 2013 and April 25, 2013, Nico was routinely re-supplied with quantities of heroin from his Sinaloan source of supply. Nico would break down the inventory received from the source of supply into quantities that users and re-distributors could afford.  A user might be looking for a $20.00 bag of heroin.  A re-distributor might be looking for several grams of heroin. Nico depended on his source of supply for heroin of a consistent grade and purity.

H.    At some point in March 2013, Nico sold a quantity of heroin to a man from Laramie, Wyoming named ADAMS.  Laramie, Wyoming, is approximately 130 miles away from Denver.  ADAMS was a member of a circle of friends and acquaintances from Laramie who were involved in prescription drug and heroin abuse.  After the first

purchase in March 2013, ADAMS repeatedly made the drive from Laramie to Denver to acquire quantities of heroin which were divided and distributed among the friends and acquaintances back in Laramie.    On or about April 9, 2013, ADAMS and another individual traveled from Laramie, Wyoming, to Federal Boulevard in Denver, Colorado, where they met with Nico, whom ADAMS had contacted through telephone number (720) 327-5897.    Nico provided ADAMS with approximately 5 to 10 grams of heroin on April 9, 2013, which ADAMS carried back to Laramie, Wyoming.

I.    On the evening of April 10, 2013, ADAMS called law enforcement to report that his roommate, Kaleb Paul Skog (Skog), had been found not breathing and cold to the touch within their shared apartment in Laramie, Wyoming.    Officers responded and determined that Kaleb Paul Skog was deceased.    Near his body, investigators recovered a syringe which contained traces of heroin, a Schedule I controlled substance.    The room contained additional narcotics paraphernalia. On the body of Kaleb Paul Skog officers observed a ligature and a recent puncture wound, consistent with the intravenous use of heroin.    A subsequent autopsy conducted by forensic pathologist James A. Wilkerson IV, M.D., confirmed that Kaleb Paul Skog had died of heroin intoxication.

J.    ADAMS admitted to investigators that he provided the heroin to Skog which resulted in Skog's fatal overdose.    Specifically, ADAMS indicated that a group of friends and associates who were using heroin in Laramie were out of heroin and needed a re-supply on or about April 8, 2013.    ADAMS stated that the friends and associates made

−10−

a plan to travel to Denver for heroin and pooled funds to purchase heroin.  Skog agreed to allow ADAMS to use Skog's car for the heroin run to Denver.  On or about April 9, 2013, ADAMS and another man traveled in Skog's vehicle from Laramie, Wyoming, to Federal Boulevard in Denver, Colorado, where they met with a Hispanic male heroin dealer whom ADAMS contacted through telephone number (720) 327-5897. Examination of toll records from the service provider for 720-327-5897 confirms Nico's phone had contact with area code 307 numbers used by ADAMS on April 8 and April 9, 2013.  ADAMS told investigators that he actually made the trip between Laramie and Denver twice on or about April 9, 2013, purchasing heroin from the same heroin dealer on both occasions.  On each trip Adams purchased between 5 grams and 10 grams of heroin from Nico.

K.    After the first heroin run to Denver on or about April 9, 2013, ADAMS returned to Laramie, Wyoming with heroin he acquired from Nico, and gave a portion of that heroin to Skog.    ADAMS gave the heroin to Skog in part because ADAMS owed money to Skog for rent and a prior debt.  ADAMS also provided heroin to Skog in exchange for the use of Skog's vehicle for the first trip to Denver on April 9, 2013. ADAMS was Skog's only source of supply for heroin during April 8 through 10, 2013.

L.    Nico was a Honduran national.   Denver Police Department narcotics detectives were familiar with the typical pattern of heroin distribution in the Federal Boulevard neighborhood where Nico operated in March and April 2013.  Groups of Honduran nationals involved in street level narcotics sales worked together to obtain necessary logistical support, such as helping one another find places to live, helping one another acquire cell phones, and helping one another avoid law enforcement.   The

-11-

Honduran national street dealers routinely and repeatedly would be supplied and
re-supplied with heroin and cocaine on a timely basis by cells of Sinaloans with reliable
access to marketable supplies of heroin.

M.      The DPD narcotics detectives saw that Sinaloan sources of supply
preferred to deal in larger quantities to fewer customers.   The Sinaloan distributors had a
preference for Honduran groups.  Some of the Honduran groups were composed of
Honduran nationals who were from the same town or nearby towns in Honduras. The
Honduran nationals often knew each other well and were unlikely to be collaborating with
law enforcement. The Hondurans street level dealers were a means for the Sinaloan
sources of supply to sell larger amounts of heroin and minimize the risk of selling to an
undercover officer or a confidential informant working with law enforcement.   In turn, the
Hondurans could count on the Sinaloans for availability of heroin supplies of marketable
quality – heroin which is too strong can hurt or kill customers and heroin that is too weak
fails to satisfy the customers.   Consistency and reliability in a source of supply are
important to the street level distributors. Consumers who were not satisfied would seek
out alternative dealers whose heroin was stronger or whose higher-level sources of
supply were more reliable.

N.      On April 10, 2013, Denver Police Department (DPD) investigator Bret
Starnes contacted Nico with a confidential informant – the informant contacted Nico on
phone number 720-327-5897 and purchased heroin.  On or about April 24, 2013, Nico
was arrested for selling heroin to the DPD confidential informant and was booked by
Denver Police under the name of Nicolas Cruz-Torres.  At the time of his arrest, Nico had

on his person the cell phone with the number 720-327-5897. Service provider records show the 720-327-5897 phone was activated on or about March 5, 2013.

O.     Following his arrest and prosecution in Wyoming, ADAMS eventually viewed a photograph of the man DPD arrested under the name of Nicolas Cruz-Torres and stated the man in the photograph looked like the man who sold ADAMS heroin on April 9, 2013, in Denver, CO. ADAMS indicated the man was his only source of supply for the heroin ADAMS solicited and acquired on April 9, 2013, and ADAMS indicated the heroin he acquired in Denver from Nico on April 9, 2013, was the heroin ADAMS re-distributed to Skog and others back in Wyoming before Skog's death on April 10, 2013.

P.     Nico eventually identified "Guero" (Marco Castro-Cruz) as the man who provided the heroin that Nico delivered to ADAMS on April 9, 2013. Review of service provider records shows that the 720-327-5897 mobile telephone had frequent, repeated contacts in April 2013 with a mobile phone number used by the defendant, as well as contacts with the area code 307 mobile phones used by ADAMS.

Q.     The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or evidence which a party believes relevant to sentencing. Further, the Court is not bound by the factual stipulations of the parties. In determining the factual basis for the sentence, the Court may consider not only the stipulations of the parties, but also the results of any pre-sentencing investigation that will be conducted by the U.S. Probation Department, together with any other relevant information that may be brought to the Court's attention. See ' 1B1.4, U.S.S.G.

R.     The parties agree that the defendant is not eligible for relief under the safety
valve (U.S.S.G. Section 2D1.1(c)(16) and Section 5C1.2).

## VI.   CRIMINAL HISTORY CATEGORY

A.     Under Sentencing Guidelines Section 4A1.1, the Government calculates
the defendant has a limited criminal history and is estimated to be in Criminal History
Category II.  The defendant notes the Maricopa County, Arizona, conviction is from an
old case and respectfully asks the Court to apply Criminal History Category I.

## VII.   SENTENCING GUIDELINES PREDICTION

A.     The parties understand that the imposition of a sentence in this matter is
governed by 18 U.S.C. ' 3553.  In determining the particular sentence to be imposed,
the Court is required to consider seven factors.  One of those factors is the sentencing
range computed by the Court under advisory guidelines issued by the United States
Sentencing Commission.  In order to aid the Court in this regard, the parties set forth
below their estimates of the advisory guideline range called for by the United States
Sentencing Guidelines.  To the extent that the parties disagree about the guideline
computations, the recitation below identifies which matters are in dispute.     The
defendant is also aware that a sentence imposed under the Guidelines does not provide
for parole.  Knowing these facts, the defendant agrees this Court has jurisdiction and
authority to impose any sentence within the statutory maximum set for this offense.

B.     The defendant is also aware that any estimate of the probable sentencing
range that he may receive from his counsel, the Government, or the Probation
Department, is a prediction, not a promise, and is not binding upon the Government, the
Probation Department, or the Court.

-14-

C. The following factors, stipulated to by the parties, are deemed to be relevant to the sentencing of this defendant under the Guidelines and are intended to advise the Court and the Probation Department of the parties' calculations in advance of the preparation of the pre-sentencing investigation report (PSI), as set forth under ' 6B1.4 of the Guidelines:

D. Since the parties stipulate and agree to an appropriate sentencing range pursuant to Fed.R.Crim.P. 11(c)(1)(C), and the offense of conviction in this case has a 20 year minimum mandatory sentence, the Sentencing Guidelines have only been consulted to help determine a reasonable sentence to offer the Court. Under § 2D1.1(a)(2), the distribution of heroin resulting in death results in a base offense level of 38. With two levels off for acceptance of responsibility, the adjusted offense level would be level 36. Criminal History II, offense level 36, has a presumptive Guideline range of 210-262 months. The statute, 21 U.S.C. § 841(b)(1)(C) provides a minimum mandatory sentence including 20 years (240 months) of imprisonment where death results from distribution of heroin, therefore the guideline range becomes 240-262 months.

E. The parties specifically stipulate and agree the Defendant should be sentenced to a term of imprisonment between 20 and 23 years to run concurrent with the sentence in District of Colorado Case 14-cr-144-CMA. The defendant may advocate any sentence within the range of 20 to 23 years of imprisonment – government's ultimate recommendation within this range rests within the sole discretion of the government. Pursuant to Fed. R. Crim. P. Rule 11(c)(1)(C), the parties agree that the sentence to imprisonment based on the Wyoming case and

the sentence to imprisonment based on relevant offense conduct in the Colorado case shall be concurrent, and the concurrent sentences to imprisonment shall not exceed 23 years.

F.   The parties agree that this Plea Agreement in the present case and the defendant's Plea Agreement in District of Colorado Case No. 14-cr-144-CMA-4 should be read and construed together to determine the sentence including a period of 20 to 23 years imprisonment agreed to among the parties pursuant to Fed. R. Crim. P. 11(c)(1)(C).   The statutory minimum mandatory sentence includes a minimum mandatory prison term of 20 years (240 months).   The parties stipulate that a sentence of 20-23 years imprisonment, concurrent with the sentence imposed in case number 14-cr-144-CMA-4, would be reasonable and appropriate and would otherwise satisfy the factors enumerated in 18 U.S.C. section 3553(a).

## VIII.   ENTIRE AGREEMENT

This document states the parties= entire agreement as to this case.   With the exception of the plea agreement being filed for Colorado case number 14-cr-000144-CMA, there are no other promises, agreements (or Aside agreements@), terms, conditions, understandings, or assurance, express or implied.   In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurance not expressly stated in this agreement and the agreement being filed in case 14-cr-000144-CMA.

_Marco Castro Cruz_
MARCO CASTRO-CRUZ,
Defendant

_19/9/17_

Boston H. Stanton, Jr., ESQ,
Attorney for Defendant

_9/19/17_
DATED

BARBARA SKALLA
Assistant U.S. Attorney
District of Colorado
Attorney for the Government

_9/30/17_

GUY TILL
Special Attorney for the U.S. Attorney General,
District of Colorado Assistant U.S. Attorney

Attorney for the Government
_20 Sep 17_

DATED

144_WYO_MCC_Rule_20_PA_14_SEP-Conspriacy_GT_ZK_ZP